IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN LEDET,<br><br>   Plaintiff,<br><br>v.<br><br>CALIFORNIA WASTE SOLUTIONS, INC., JOEL CORONA and DOES 1-20 inclusive,<br><br>   Defendants. | Case No.: C-12-6255 JSC<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN PART** |

In this employment dispute, Plaintiff Glenn Ledet asserts that Defendants California Waste Solutions, Inc. ("CWS") and Joel Corona have retaliated against him for his refusal to participate in improprieties at the workplace. Now pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint in part. (Dkt. No. 6.) The Court finds this matter suitable for disposition without oral argument. *See* N.D. Cal. Civ. L.R. 7–1(b). Accordingly, the hearing set for March 21, 2013 is VACATED. Having considered the parties' pleadings and the relevant legal authority, and for the reasons set forth in this Order, the Court GRANTS Defendants' Motion.

**ALLEGATIONS OF THE COMPLAINT**

CWS, a waste collection and recycling services company that contracts with municipalities, hired Plaintiff in January 2007 as a Customer Service Manager for its San Jose and Oakland, California operations. (Dkt. No. 1 ¶ 14.) Plaintiff was subsequently promoted and is currently the Customer Service, Contract Compliance and Public Outreach Manager for San Jose and Oakland. (*Id.*)

Plaintiff's Complaint recounts a litany of instances where CWS and its employees—Defendant Corona, in particular—pressured Plaintiff to take certain actions or, in some instances, risk retaliation. Between 2009 and 2012, Corona "has directed Plaintiff to withhold information on CWS vehicle substandard maintenance, hazardous material spillage, violations of contract with the City of San Jose, specific personnel issues, and other claims against CWS." (*Id.* at ¶ 22.) Corona threatened that if Plaintiff did not cooperate Plaintiff "would receive negative reviews, would be passed on for promotions and raises, along with Plaintiff's subordinate support employees." (*Id.*) During 2010 and 2011, Plaintiff received complaints from the City of San Jose and customers about broken glass on San Jose streets. (*Id.* at ¶ 23.) Plaintiff informed Corona of the complaints, and Corona directed Plaintiff "to withhold information from CWS owners and the City of San Jose." (*Id.*)

In May 2012, Plaintiff was called into a meeting with, among others, Corona, CWS' attorney, and CWS' owner. (*Id.* at ¶ 18.) CWS' attorney informed Plaintiff that an ex-employee and the California Department of Fair Employment and Housing ("DFEH") had called him as a witness in an investigation conducted by DFEH. (*Id.*) CWS, through its attorney, "advised Plaintiff not participate and cooperate with the DFEH investigation." (*Id.*)

The next month, Plaintiff received an invoice from the City of San Jose for the cost of removing a damaged tree from a curbside in San Jose. "Plaintiff was asked to sign a claim denial letter to the customer despite the facts supporting that CWS was at fault. As a result of Plaintiff's refusal to sign said letter containing falsified facts, Defendant Corona threatened Plaintiff's employment." (*Id.* at ¶ 19.) Approximately two months later, Plaintiff reported the incident to CWS "human resources generalist," John Lam. (*Id.* at ¶ 20.) Despite his complaint and reassurances that

CWS would investigate, Plaintiff believes that CWS has not investigated or prevented retaliation by Corona. (*Id.*)

In July 2012, Corona "instructed Plaintiff to engage in insurance fraud by making statements on behalf of CWS to its insurance investigator surrounding the destruction by fire of a CWS garbage truck. Plaintiff was again retaliated against by Defendant Corona for his failure to participate in insurance fraud." (*Id.* at ¶ 24.) In another incident the next month, Corona instructed Plaintiff to "steal [trash] carts from customers and provide the same to others to avoid imposition of penalties by the City of San Jose. Plaintiff has since suffered retaliation by Defendants." (*Id.* at ¶ 25.) Although Plaintiff filed a complaint with CWS human resources, it has "refused to appropriately address Plaintiff's complaint." (*Id.*)

Finally, "Corona continued in his retaliatory conduct against Plaintiff in a September 2012 meeting involving Plaintiff, Defendant Corona, and City Officials with the City of San Jose." (*Id.* at ¶ 21.) Corona has "made it abundantly clear to Plaintiff that he would be fired for supporting Defendant in his dishonesty to the City of San Jose." (*Id.*)

Between Plaintiff's date of hire in January 2007 and May 2012, Plaintiff has never had a formal job or performance review. (*Id.* at ¶ 26.) However, since all the incidents giving rise to this action, Defendants have, as of May 2012, begun to initiate performance review meetings. (*Id.*)

Based on the foregoing, Plaintiff's Complaint presents four causes of action against both defendants: 1) retaliation in violation of Title VII of the Civil Rights Act of 1994; 2) retaliation in violation of 42 U.S.C. § 1983; 3) violation of California Labor Code Section 1102.5; and 4) breach of the implied covenant of good faith and fair dealing.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988). While "detailed factual allegations" are not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements' of a cause of action." *Iqbal,* 556 U.S at 663. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

**DISCUSSION**

Defendants' motion seeks dismissal of 1) all claims against Corona, and 2) Plaintiff's second cause of action under Section 1983 as to CWS. As discussed below, the Court agrees that such dismissal is warranted.

**A.      Title VII**

Defendant argues that Plaintiff's claim under Title VII must be dismissed with prejudice against Corona because only employers are liable under Title VII and Corona is undisputedly not Plaintiff's employer. The Court agrees.

As Plaintiff acknowledges, employees, supervisors, and other agents of the employer, may be sued under Title VII in their official but not individual capacities. *See Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993) (holding that reference to an employer's agent in the statute's definition of "employer" was meant to merely incorporate respondent superior liability into the statute); *see also Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998) ("[Title VII liability] does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee."). Plaintiff's argument that *Miller* supports holding Corona individually liable under Title VII because Corona "was acting in his official capacity," (Dkt. No. 11 at 3), is illogical and directly contrary to the rule established in *Miller*.

4

1 Because there is no dispute that Corona is not Plaintiff's employer, Defendants' motion to
2 dismiss Plaintiff's Title VII claim as to Corona is GRANTED without leave to amend.

**B.     Section 1983**

Plaintiff alleges that Defendants retaliated against him in violation of Plaintiff's constitutional right to free speech. Where a person's constitutional rights have allegedly been violated, a cause of action for relief may be brought pursuant to 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must show both (1) the deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); 42 U.S.C. § 1983. "As a general matter, private persons do not act under color of state law absent significant governmental involvement in the action." *Visintini v. Hayward*, 2009 WL 2413356, at *3 (N.D. Cal. Aug. 5, 2009). "The Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997)

Defendants assert that Plaintiff's Section 1983 claim must be dismissed as to both defendants because Plaintiff fails to allege facts supporting that the alleged conduct was committed by a person acting under the color of state law, i.e., that there was state action. The Court agrees. Although Plaintiff appears to argue that state action is present based only on "public function" test, the Court addresses below all four possible bases for state action.

**1.     Public function**

Under the public function test, a private entity may engage in state action where it exercises powers traditionally exclusively reserved to the State. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974); *Lee v. Katz*, 276 F.3d 550, 555–56 (9th Cir. 2002). Defendants, without reliance on case law, assert that "the collection of solid waste is plainly not a power traditionally *exclusively reserved* to the state." (Dkt. No. 12 at 4 (emphasis original).) Defendants argue that garbage collection "is noticeably distinct" from activities found by the Supreme Court to be public functions, such as holding elections, exercising eminent domain, and operating a company-owned town. (*Id.*) Plaintiff

5

responds that waste collection is a function traditionally reserved to the government, reasoning that it "directly impacts the health and welfare of the residents" in the cities that CWS serves. (Dkt. No. 11 at 4.) These allegations, which are not even included in Plaintiff's Complaint, are insufficient to meet the pleading standards of *Twombly* and *Iqbal* because they are mere conclusions, not facts. *See Iqbal*, 556 U.S. at 663 (holding that while "detailed factual allegations" are not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face"). As such, the Court need not accept those allegations as true. *Id.*

Even if waste collection was a power traditionally exclusively reserved to the states, Plaintiff still has not satisfied the public function test in this case. The Ninth Circuit instructs that courts identify the specific conduct at issue "because an entity may be a State actor for some purposes but not for others." *Lee v. Katz*, 276 F.3d 550, 555 n.5 (9th Cir. 2002) (internal quotation marks and alteration omitted). In *George v. Pacific-CSC Work Furlough*, the Ninth Circuit considered the complaint by a custodial staff employee of a private entity, Pacific, which had contracted with California to operate a correctional facility. 91 F.3d 1227, 1230 (9th Cir. 1996). After the custodial employee was terminated, he sued the private company under Section 1983, alleging that his First Amendment rights were violated because he was terminated for speaking out about safety and security problems. The Court found that while the parties agreed that incarceration is traditionally a state function, that conclusion did not control the public function analysis in that case; rather, the court explained that "[t]he relevant inquiry is whether [Pacific's] *role as an employer* was state action" in the employee's case. *Id.* (emphasis in original). Because the plaintiff's complaint offered no indication that Pacific had "become the government" for employment purposes, the court found no state action. *Id.*; *see also Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 813 (9th Cir. 2010) (applying *George* in holding that the relevant inquiry was whether the defendant charter school's role as an employer was state action).

Here, as in *George*, the specific conduct of which Plaintiff complains is Defendants' violation of his First Amendment rights because he was subject to retaliation for reporting misconduct. Plaintiff's Complaint, however, presents no facts to support the conclusion that Defendants had "become the government" for employment purposes. That CWS contracts with San

6

1   Jose and Oakland for waste collection services is plainly not enough to satisfy state action since the
2   employer in *George*, the correctional facility operator, also contracted with the government.

### 2. Joint action

"The joint action inquiry focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity, which on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment.'" *Gorenc v. Salt River Project Agr. Imp. & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). The joint action test is not satisfied here. Plaintiff's Complaint does not allege government involvement beyond the contracts between CWS and the municipalities. In *George*, the court found that a similar relationship between a private entity and the government only "indirectly" related to the plaintiff's termination by his employer and therefore joint action did not exist. 91 F.3d at 1231-32. Accordingly, Plaintiff's Section 1983 claim is dismissed to the extent it asserts state action based on the joint action test.

### 3. State Compulsion

State action may be found under the state compulsion test where the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Johnson*, 113 F.3d at 1119 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Nothing in Plaintiff's Complaint suggests that the state has exercised coercive power or has provided significant encouragement of any kind with respect to Defendants' employment related decisions. Therefore, the state compulsion test is not satisfied.

### 4. Governmental nexus

Finally, under the nexus test, the Court must consider whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351. Plaintiff appears to argue that CWS is regulated by the state through its service contracts with the municipalities. Specifically, Plaintiff states that the contracts with "both the City of Oakland and the City of San

1  Jose direct[] how the Defendant must comply with State and Federal employment laws[.] [They]
2  also direct[] Defendant CWS as to additional items pertaining to retaliation, discrimination as does
3  all contracts with a government entity." (Dkt. No. 11 at 4.) None of these specific allegations
4  related to the contracts between CWS and the municipalities is included in Plaintiff's Complaint.
5  Even if they were included, however, Plaintiff's claim would still fail. A contract between a private
6  entity and the state that gives the state the power to regulate the private entity's employment
7  decisions does not satisfy the nexus test if the plaintiff fails to allege that the state was *actually*
8  involved in any of the private entity's employment decisions. *See George*, 91 F.3d at 1231 (finding
9  no nexus where state retained authority to regulate employment decisions, but had not "contractually
10 specified the manner in which Pacific disciplines or terminates its own employees"). "The day-to-
11 day management of private contractors performing government functions does not generally
12 constitute state action." *Id.*

13 Because Plaintiff's claim does not contain facts supporting a nexus between the government
14 and the complained-of conduct, the nexus test is not satisfied.

**C.  California Labor Code Section 1102.5**

16 Defendant asserts that Plaintiff's Section 1102.5 claim against Corona must also be
17 dismissed because that section imposes liability only on the employer, and Corona is indisputably
18 not Plaintiff's employer. The Court agrees.

19 California Labor Code Section 1102.5 is a "whistleblower" statute that protects an employee
20 who discloses illegal conduct by prohibiting an employer from retaliating against an employee for
21 such action. The chapter of the Labor Code in which Section 1102.5 is found does not include a
22 definition of "employer"; however, Plaintiff provides definitions of "employer" from another chapter
23 of the Labor Code, as well as a definition from the Government Code. Plaintiff argues that these
24 definitions include an employer's agents as an "employer." *See* Cal. Labor Code § 1132.2
25 (employer "includes any person . . . association or entity acting as an agent of an employer"); Cal.
26 Gov. Code § 12926(d) (employer includes "any person acting as an agent of an employer"). The
27 California Supreme Court, however, has already rejected Plaintiff's argument, holding that Section
28 12926(d) does not impose individual liability on an employer's agent. *See Reno v. Baird*, 18 Cal.

1  4th 640, 650, 656 (1998) (recognizing that federal courts, including the court in *Miller*, have
2  increasingly held that Title VII's similar definition of "employer" does not impose individual
3  liability on employees). In addition, although no court has specifically addressed the "employer"
4  definition in Section 1132.2, which relates to professional strikebreakers, Plaintiff provides no
5  explanation as to why this definition should be applied here, let alone why the Court should find that
6  it imposes individual liability on Corona while almost identical "employer" definitions have been
7  found to impose no such liability.

8  Because Section 1102.5 prohibits the actions of only an employer, Corona's alleged behavior
9  is not covered by the statute and the claim against him must be dismissed. Because there is no
10 dispute that Corona is not Plaintiff's employer, dismissal is with prejudice.

11 **D. Covenant of Good Faith and Fair Dealing**

12 Finally, Defendants argue that Plaintiff's claim for breach of the covenant of good faith and
13 fair dealing must be dismissed as to Corona because Plaintiff's employment contract is between only
14 Plaintiff and CWS, not Corona. The Court agrees. Under California law, it is well settled that a
15 non-party or non-signatory to a contract cannot be held liable for a breach of that agreement. *See*
16 *e.g., Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 824 (1979) (holding that insurance agents who
17 were not parties to the insurance contract in dispute could not be held liable for breach of promises
18 contained therein); *Tri–Continent Int'l Corp. v. Paris Sav. & Loan Ass'n*, 12 Cal. App. 4th 1354,
19 1359 (1993) ("[plaintiff] cannot assert a claim for breach of contract against one who is not a party
20 to the contract."); *Henry v. Assoc. Indem. Corp.*, 217 Cal. App. 3d 1405, 1416–17 (1990) ("There
21 was no direct contractual relationship between [the parties] from which either a breach of the
22 covenant of good faith and fair dealing or a breach of contract action could properly spring.").

23 Plaintiff does not address Corona's status as a non-party to the contract; rather, Plaintiff
24 simply repeats his arguments that Corona is an "employer." To the extent Plaintiff argues that CWS
25 is liable for Corona's actions, the Court apprises Plaintiff that CWS does not argue to the contrary.
26 (*See* Dkt. No. 12 at 2-3 ("Although Defendants vigorously dispute the allegations of Plaintiff's
27 Complaint and unequivocally deny any wrongdoing, there is no dispute that discriminatory actions
28

9


1  by an employer's agent on the employer's behalf may be imputed *to the employer*.") (emphasis
2  original).)
3        Because it is undisputed that Corona is not a party to Plaintiff's employment contract,
4  Plaintiff's breach of the implied covenant claim is dismissed with prejudice as to Corona.

## CONCLUSION

For the reasons stated, the Court GRANTS Defendant's Motion to Dismiss. Claims one, three, and four are dismissed with prejudice as to Corona. Claim two is dismissed with leave to amend as to both defendants. An amended complaint, if any, shall be filed by April 8, 2013.

IT IS SO ORDERED.

Dated: March 18, 2013

                                                                                               _____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE